(No. 3029. Feb. 13, 1925.)

STATE ex rel. HANNETT v. DISTRICT COURT OF FIRST JUDICIAL DIST. IN AND FOR SANTA FE COUNTY et al.

### SYLLABUS BY THE COURT

Under the provisions of chapter 28, Laws 1919, an action must, in any event, be brought in the name of the state. A private person, desiring to contest for a state office, must apply to the Attorney General for his concurrence in the filing of his complaint, and the Attorney General must either concur or refuse to act, in which latter event the private person may proceed independently. There is no authority under such statute to file a complaint in the name of such con-

testant, and, unless all the foregoing requirements are complied with, there is no jurisdiction of the subject-matter in the court in which such a proceeding is filed.

Petition by the State of New Mexico, on the relation of Arthur T. Hannett, for prohibition to be directed to the District Court of the First Judicial District of the State of New Mexico within and for the County of Santa Fe and Reed Holloman as Judge thereof.    Peremptory writ awarded.

Summers Burkhart, of Albuquerque, and James A. Hall, of Clovis, for relator.

A. B. Renehan, of Santa Fe, and F. E. Wood, of Albuquerque, for Manuel B. Otero, and against writ.

### OPINION OF THE COURT

PARKER, C. J.   A motion for leave to file a complaint in the nature of quo warranto was filed in the district court of Santa Fe county by Manuel B. Otero, charging Arthur T. Hannett with usurpation of and unlawful intrusion into the office of Governor of the state, to which office the said Otero claimed to have been elected at the November, 1924, election. The motion sets up that A. B. Renehan, Esq., attorney for Mr. Otero, wrote John W. Armstrong, Attorney General, as follows:

"Santa Fe, N. M., January 2,1925.

"Hon. John W. Armstrong, Attorney General, Santa Fe, N. M.—Dear Sir: I herewith present to you in person the complaints of Manuel B. Otero, candidtae on the Republican ticket at the last election for the Governorship of this state, John W. Chapman, candidate on the said ticket for the Attorney Generalship of this state, at the last election, Thomas McGrath, candidate on the said ticket at said election for the office of member o? the state Corporation Commission, Antonio T. Chaves, candidate on said ticket at said election for the office of state auditor, and Prager Miller, candidate on the said ticket at said election for the office of state commissioner of public lands, all defeated on the face of the returns and on the face of the certificate of election issued by the state canvassing board to their respective opponents on the Democratic ticket as successful in their candidacies for the respective offices, to-wit: Arthur T. Hannett for the office of Governor, John W. Armstrong, yourself, for the office of Attorney General, Ed. Tafoya for the office of member

State ex rel. v. Ct. 1st Dist., Santa Fe Co. et al, 30 N. M. 300

of the Corporation Commission, Juan N. Vigil, for the office of state auditor, and Justiniano Baca for the office commissioner of public lands, the said complaints being verified.

"Assuming that among other reasons, on account of the fact that you yourself are respondent in the complaint so submitted, you will not undertake to handle these cases on the part of the state, I ask that you make known to me at the earliest reasonable moment, the attiutde which you will assume on these matters. At the bottom of my retained copy of this communication I have prepared a form which I will ask you to execute.

"These complaints give in detail the bases, general and particular, upon which the complainants base their charge of wrong, the general purport thereof being that the said respondents respectively are in law intruders upon and usurpers of the respective offices of Governor, Attorney General, member of the Corporation Commission, state auditor, and commissioner of public lands of the State of New Mexico.

"Very respectfully,

"(Signed)      A. B. Renehan,
"Attorney for Respective Complainants.

"For good and sufficient reasons, I, as Attorney General of this state ,refuse to act in these matters.

"Dated at Santa Fe, N. M., this........................... day of January, 1925.

"........................................, Attorney General."

"January 3, 1925.

The complaints of the five state officers referred to in the letter were not submitted to the Attorney General with the letter. In reply to this letter, the Attorney General wrote Mr. Renehan as follows:

"Hon A. B. Renehan, Attorney at Law, Santa Fe, N. M.— Dear Sir: Replying formally to your request of today with regard to instituting certain proceedings in the nature of quo warranto against Governor A. T. Hannett and others, so far as to proposed proceedings against me is concerned, inasmuch as the statute requires my express refusal before such a proceeding may be instituted by my opponent and in order that you may have full power to proceed, I expressly refuse to institute such a proceeding, but this refusal is limited to the case proposed to be filed against me. As to the others, I expressly decline to refuse to institute them, but on the contrary shall be glad to consider anything you may have to submit concerning the good faith of such proceedings and the facts upon which you rely to support them, and, if I become satisfied that proceedings of such nature should in good faith be filed, and that there is merit in the claims of the

persons desiring to institute them, I shall promptly act by instituting and prosecuting the same.

"My reason for assuming this attitude is that such proceedings will necessarily entail a great deal of expense to those instituting them as well as to those against whom they are filed. People from all parts of the state will be inconvenienced and put to expense in connection therewith, and the same will have a very disturbing effect upon business conditions throughout the state, and a great deal of time will needs be consumed in their prosecution.

"I have received a similar from Hon. Felipe Sanchez y Baca for permission to institute a proceeding of the same nature against Hon. Edward Sargent involving the office of Lieutenant Governor, and I have assumed the same position with reference to his request that I am taking' herein.

"As soon as you are prepared to submit the nature of the suit you desire filed together with a summary of evidence you rely upon to sustain the same, I shall give the subject my careful consideration and act in accordance with what I have hereinbefore said.

' 'Respectfully,

"(Signed)    John W. Armstrong,
                                    "Attorney General."

On January 6, 1925, Mr. Renehan held a personal interview with Attorney General, in which the Attorney General was asked what he would require to cause him to act in the proposed proceeding of Mr. Otero against Mr. Hannett, and he agreed to examine the proposed verified complaint of Mr. Otero and confer with Mr. Renehan later. On the same day, Mr. Renehan wrote the Attorney General as follows:

"Santa Fe, N. M., January 6, 1925.

"Hon. John W. Armstrong, Attorney General, Santa Fe, N. M.—My Dear Attorney General: Herewith I submit the sworn complaint of Mr. Otero, and a copy thereof, in| conformity with my conversation with you today, in which you stated that you thought I ought to submit to you affidavits supporting the allegations of the complaint, but later stated that you would look at the complaint, under oath, to which I referred. and which I transmit to you herewith.

"I also ask you to keep it intact for me, both in the event that you refuse to file it or the others, and in the event that you do determine to file the information or complaint as Attorney General, and so that you will have a complete copy I send you herewith an extra copy which you may retain on the return to me of the original, which is signed and sworn to and which is backed.

"You will notice that the first page is largely blank. It was so left in order that I might accommodate myself to your refusal or consent, as the case might be.

"In order that your file may be complete, I return herewith to you my original letter to you dated January 2d, and which my messenger brought back to me, somewhat inappropriately, and which you answered on January 3d.

"Very truly yours,

"(Signed) A. B. Renehan."

This letter, with the proposed complaint, was delivered to the Attorney General on January 8, 1925, which complaint was verified by Mr. Otero and signed by Mr. Renehan as attorney for Mr. Otero. The Attorney General, instead of conferring further with Mr. Renehan, struck out the name of Mr. Renehan as attorney for Mr. Otero, and signed his own name as Attorney General, and filed the complaint in the district court of Bernalillo county. (We assume from the argument that the complaint was entitled in the district court for Santa Fe county, although that fact does not directly appear in the record.) The motion for leave to file was ex parte; the Attorney General having no notice of the same. The court made an order on January 15, 1925, granting leave to file the complaint, and made certain other orders regarding security for costs by both parties, and for process to be observed on Mr. Hannett, as contemplated by the provisions of chapter 28, Laws 1919. The complaint filed, in pursuance of the leave granted, is entitled "Manuel B. Otero, Plaintiff, v. Arthur T. Hamnett, Defendant." and no attempt was made to make the state a party. It alleged the supposed facts of wrongs in the said election committed in favor of Mr. Hannett, and upon which Mr. Otero claimed the election, in great detail, as prescribed by said chapter 28, Laws 1919. No motion or other application has been made to said court by Mr. Hannett to dismiss said cause or to decline jurisdiction thereof. On January 24, 1925, there was filed in this court a petition for a writ of prohibition against the said court and Judge Holloman, the presiding judge, restraining them from hearing and determining said cause, upon the ground of want of jurisdiction of the subject-matter. We issued an alter-

native writ, to which a return was made, setting up the foregoing facts, and the cause was argued and submitted on January 31st last. At the hearing a supplemental return was filed by the respondents, setting up certain facts, occurring after the filing of the complaint, designed to show inferentially that the Attorney General had in fact refused to act in the matter, but we do not see how we can consider the same. Whether the district court of Santa Fe county had jurisdiction to entertain the cause at the time he did entertain the same must depend upon the facts then existing.

At the threshold of the inquiry a consideration presents itself as to whether relator, Mr. Hannett, is entitled to the writ of prohibition; he having made no application to the court below to determine the question of jurisdiction. All that was done was to ask the judge unofficially whether he intended to take jurisdiction and proceed with the case. However, as this point is not made by counsel for Mr. Otero, who on the other hand, rather invites the action of this court, we will pass the point as negligible in this case.

It is apparent from a reading of the complaint filed by Mr. Otero that the action was brought upon the theory that a person, claiming a state office, may bring an action in his own name to contest the seat of his opponent who has obtained the certificate of election. This proposition is denied by relator. The whole question turns upon a proper interpretation of chapter 28, Laws of 1919, heretofore mentioned.

It may be said, preliminarily, that statutes of this kind are remedial in character, and as such should be liberally interpreted to effectuate the objects intended. High on Extraordinary Legal Remedies, § 622. The act is entitled "An act to authorize proceeding in quo warranto." Section 1 provides for the filing of a complaint as in other civil actions where quo warranto remedies are sought, and dispenses with the necessity of the formal writs employed in such cases, but reserves to this court and the district courts the power to employ the original writs as heretofore. This sec-

tion does not provide as to who may file the action. Sections 2 and 3 contain procedural provisions not necessary to be noticed. Section 4 designates the instances in which the action may be brought, including cases of usurpation of, intrusion into, and unlawfully holding, any public office, and provides that the action may be brought by the Attorney General or a district attorney in the name of the state upon his own information, or upon the complaint of any private person. It further provides:

"When the Attorney General or district attorney refuses to act, or when the office usurped pertains to a county, incorporated village, town or city, or school district, such action may be brought in the name of the state by a private person on his own complaint."

This section contains no authority, in any event, to bring the action in the name of a private person for the possession of a state office, but the same must be brought in the name of the state and with the concurrence of the Attorney General, if he will act, and in the name of the state by a private person in case the Attorney General refuses to act. In other words, the private suitor must in any event bring the action in the name of the state, and may do so only in event the Attorney General refuses to act. Section 5 provides for the giving of a cost bond by the private plaintiff. Section 6 provides that, "whenever such action shall be brought against a person for usurping an office, the Attorney General, district attorney or person complaining, in addition to the statement of the cause of action,"—here follows provisions requiring certain facts to be alleged and providing for a bond by the defendant for repayment of fees and emoluments in case he loses the office, and providing for an injunction against the disbursing officers from paying the defendant in cas eof his failure to give such bond. Sections 7, 8, 9, and 10 have no bearing upon the present inquiry. Section 11 exempts the state and Attorney General from costs. The remaining sections of the act have no bearing upon the inquiry.

It is apparent from the foregoing review of the

statute that the state is an indispensable party plaintiff in a proceeding of this kind. It is so provided by the letter of the statute. While the state, ordinarily, has no substantial interest in such a controversy, the real party in interest being the contestant for the office, who might well be allowed to bring the action in his own name, it is not for us to question the wisdom of the statute. That rests with the Legislature. The relative interest of the state and that of the contestant, however, are important in the consideration of some other phases of the question. It appears from section 6, above quoted, that the contestant may formulate his complaint, and shall state herein certain required facts. This is strong evidence of the legislative intent to allow the contestant for a state office to frame his allegations in his own way and submit the finished pleading to the Attorney General, with his request to file the same or to refuse to file it. The contestant is the real party in interest, and should be allowed to present and try his own case in his own way, and to be represented by counsel of his own choice; the state, ordinarily, having no more than a nominal interest in the proceeding. We are aware that in Wisconsin, whence this statute is apparently adopted, a contrary view is expressed to the effect that the Attorney General may use his own discretion as to the form of the pleading in an election contest, so long as the issues, as made by the contestant, are substantially preserved. But the reasoning seems to be inconclusive. If a claimant to a state office has a right to present his case in his own way, as we hold, there is no reason for the Attorney General to meddle with it; there being no interest of the state to be subserved. Of course, if the interests of the state are or become involved in any given controversy, the Attorney General may take such part in the proceeding as to protect those interests, whether he has consented to act or has refused to act. But such is not the case here.

In this same connection, the question of venue is involved. A case of this kind is fundamentally an election contest in which no one is substantially interested

except the parties concerned. It is in the nature of a civil proceeding, although for some purpose it might be held to be a special proceeding. It is, at any rate, such a proceeding as to be governed as to venue by the provisions of section 5567, Code 1915, which provides for the bringing of civil actions in the county where the plaintiff or defendant resides, or where the cause of action originated. The cause of action in this case, as between the contestants for the office, originated in Santa Fe county, where the entry into office took place. The venue, therefore, may be properly laid in that county. In the question of venue the state has no interest, and the contestant may select the venue according to his own convenience. The Attorney General was in error in selecting Bernalillo county against the wishes of the contestant in the first instance mentioned above.

Counsel for Mr. Otero suggests that, even if we conclude that the state is an indispensable party, we should not award a peremptory writ of prohibition, because the name of the state may be added by way of amendment in the court below. In this he is in error. The state is the only party plaintiff. The contestant has the whole substantial interest, but he is merely prosecuting the case for the state. To now bring in the state by amendment would be to institute a new proceeding, which cannot be done at this stage.

Unfortunately the Attorney General is involved in a contest over the same state of facts as are present in this case; he having received the certificate of election, and being contested by his opponent at the last election. This would seem to tie his hands and prevent him from participating in this or any other similar proceeding along the same lines. However, he may well be trusted to observe the ethics involved and, if the state's interest becomes involved, the court could appoint counsel, we assume, to represent the same.

It follows from all of the foregoing that the per-

emptory writ should be awarded as prayed; and it is so ordered.

BICKLEY and WATSON, JJ., concur.