175 P.2d 998

**FERRAN v. TRUJILLO.**

No. 4948.

Supreme Court of New Mexico.

Dec. 26, 1946.

Reed Holloman and M. W. Hamilton, both of Santa Fe, for appellant-contestant.

Seth & Montgomery and Joseph M. Montoya, all of Santa Fe, for appellee-contestee.

BICKLEY, Justice.

Ferran and Trujillo were opposing candidates in the general election of 1944 for the office of County Commissioner of the second district of Rio Arriba County. Trujillo was declared elected on a canvass of the poll-book returns. Having (presumably) received his commission, qualified and entered on the performance of his official duties, in due time Ferran brought proceedings of contest by causing to be served on Trujillo a notice of contest, stating generally that if all legal votes cast in

such election had been properly received, counted, tallied, and returned, it would appear that he, Ferran, had a majority of 231. This statement is supplemented by similar statements relating to each of nineteen voting precincts in the county. As to each of these precincts it is alleged generally, (but for the number of votes involved filled in between the time of typing and filing the notice) as follows:

"That in Precinct ——, ———, of said County, the election officials of said precinct certified to the County Canvassing Board that contestant had received —— votes and that contestee had received —— votes in said precinct for said office; *but that in said precinct contestant actually received* —— votes and contestee actually received —— votes; *that by reason of the erroneous receiving, counting, tallying, and returning of the votes* in said precinct the correct result thereof was not certified to the County Canvassing Board; that by reason thereof said Canvassing Board did not include said —— votes in the total number of votes received by contestant, nor deduct said —— votes from the total number of votes received by contestee in said county for said office; that said —— votes should be credited to contestant and said —— votes should be deducted from contestee making the correct vote in said precinct for said office as hereinbefore specified." (Italics ours.)

The appellee filed his answer, setting forth several defenses, the second of which, so far as material, is as follows:

"Without waiving his First Defense, but insisting upon same, this Contestee states the Notice of Contest fails to state facts upon which relief may be granted for the following reasons:

"1. Said Notice shows upon its face in paragraphs III to XXII inclusive, that contestant's ground of contest as therein alleged is nothing more than an application for a recount of the ballots of the various precincts therein specified; that said allegations in said paragraphs are merely general allegations of error without pointing out any specific mistake or fraud, or the substance of the facts upon which his belief is founded, and therefore such general allegations of error believed to exist is not sufficient ground upon which to base a contest proceeding under the statutes of New Mexico.

"2. That said Notice of Contest amounts to nothing more than an application for recount in said precincts and may not be maintained for the reason that the Legislature has made ample provision for such recount and such statutory enactment provides the exclusive remedy for such recounts.

"3. That said Notice of Contest in said paragraphs alleges 'erroneous receiving' of

ballots by said election officials, and wholly fails to comply with section 56-604 New Mexico Statutes 1941 Annotated, by specifying the name of each person whose vote was so illegally cast or counted, and the facts showing such illegality; that as to the remaining allegations of error by said election officials contained in said paragraphs in the 'counting, tallying and returning of the votes,' such alleged errors are to be corrected under the recount statutes and not by contest proceedings.

"4. That said Notice of Contest fails to allege which ballots in the various precincts were 'erroneously received', and fails to allege any fraudulent act by any election official in said precincts, and therefore fails to specify grounds upon which a contest may be based under the laws of New Mexico."

The trial court, considering the matter upon the affirmative legal defenses in the answer, entered an order of dismissal of the cause, in which appears the following: "and the court having heard argument of counsel and having announced his decision that the SECOND DEFENSE in the Answer of said Contestee is well founded in law and should be sustained, for the reasons that the Notice of Contest does not specify sufficient facts upon which to base a contest proceeding in New Mexico; and for the further reason said Notice of Contest can not be substituted as an application for a recount of votes under the laws of New Mexico;

"It is therefore ordered that the Notice of Contest be and the same is hereby dismissed."

From that order this appeal was taken. For the purpose of this review, we find it sufficient to consider only contestant's first assignment of error, which is as follows:

"I. The Court erred in holding that the notice of contest does not specify sufficient facts upon which to base a contest proceeding under the Laws of New Mexico."

Plaintiff's challenge is presented under Art. 6 of the Election Code entitled "Contested Elections," 1941 Comp. 56-601 et seq. Section 56-604 is as follows:

"Contents of notice.—The notice shall specify the grounds upon which the claim of the contestant is based, and if he claims that illegal votes have been cast or counted for the contestee, he must specify the name of each person whose vote was so illegally cast or counted, the precinct or election district where he voted, and the facts showing such illegality.. (Laws 1927, ch. 41, § 604, p. 62; C.S.1929, § 41-604.)"

Under our method of contesting elections, the notice of contest takes the place of a complaint in an ordinary suit. Therefore it must contain a plain statement of the claim showing that the pleader is entitled to relief. See 1941 Comp. 19-

101(8). The compiler's note says that par. (a) of the rule and Rule 10(a), (c), are deemed to supersede secs. 105-404, 105-501, 105-511, 105-525, Comp.Stat.1929, a portion of which follows:

"Second. A statement of the facts constituting the cause of action, in ordinary and concise language."

While the form of the rule has been changed, we do not understand that the necessity for pleading with particularity the facts upon which the claim or conclusion of the pleader is based, so as to give notice of what the adverse party may expect to meet, has been dispensed with.

In Missouri, there was an election contest statute similar to ours, and in Hale v. Stimson, 1906, 198 Mo. 134, 95 S.W. 885, 887, the Supreme Court unanimously held that a notice of contest must "set forth facts constituting grounds of contest." The court said:

"The statutes require the 'grounds' to be stated. Grounds, in the law, can only mean substantive averments, informal, maybe, but yet in plain terms setting forth a cause of action upon which issue may be joined, and which may, at least, tend to notify contestee of the charges he must face. Upon what theory can mere conclusions, such as constitute some of the framework of this notice, be considered issuable averments? As to the rest of the framework, oddly enough, it is built on ignorance—lack of knowledge. The description of un-known voters by name, color, size, or other earmarks; the precincts where they cast their votes; diligence to ascertain a description of name, number of precinct—all are unknown, unaverred, and left in impenetrable fog, and this, ex industria. To open all the ballot boxes of Phelps county for a general recount under the averments of this notice of contest was a leap in the dark—a shot in the bush; was to use the proceeding as a quasi bill of discovery based on fishing generalities, in the hope, apparently, some culpable thing might be hooked in the depths of the great unknown and unseen and brought to the surface of the seen and known."

And nearly forty years later, in Armantrout v. Bohon, 349 Mo. 667, 162 S.W.2d 867, 869, that court again stated:

"The 'grounds' required to be stated 'can only mean substantive averments—informal, maybe, but yet in plain terms setting forth a cause of action upon which issue may be joined.' There is always the question, does 'said notice set forth facts constituting grounds of contest?' Since the notice in an election contest takes the place of a petition in an ordinary suit it 'must be judged by the rules pertaining to the sufficiency of a petition' and therefore must contain a statement of facts, not mere conclusions, which give rise to his right of

contest or action and these grounds or facts must show the violation of some mandatory provision of the statute law relating to elections or such other conduct as usually invalidates an election. If the notice of contest does not contain such averments it is subject to being dismissed on demurrer."

The foregoing is persuasive reasoning, otherwise, confronted with the statement of contestant in the notice that: "by reason of the erroneous receiving, counting, tallying and return of the votes in said precinct(s) the correct result thereof was not certified to the County Canvassing Board," the contestee may well inquire in his perplexity: "What does contestant mean by "erroneously received? Does he mean that the votes received were those of nonregistered voters? Or does he mean that votes of voters were received, who, though registered, were nevertheless ineligible to vote? What are the names of the voters whose votes were erroneously received? In what did the error consist? Which of the votes said generally should be credited to contestant were erroneously received and which were erroneously credited because not properly counted or tallied?" The answers to these and similar material questions are not forthcoming.

■ Vol. 1 Bouv.Law Dict., Rawle's Third Revision, defines Ground of Action as "The foundation, basis, or data upon which a cause of action rests." In 38 C.J. S., Ground, page 1085, defining the word "Ground," it is said:

"The term is ordinarily used in the sense of basis; foundation, or support. It is occasionally used in the sense of 'reason;' but not frequently. It has also been defined as a circumstance on which an opinion, inference, argument, statement or claim is founded, or which has given rise to an action, procedure, or mental feeling; * *."

For an instance of the words "grounds" and "facts" having been used interchangeably in our decisions, relating to this statute, see Rogers v. Scott, 35 N.M. 446, 300 P. 441, 442, where the court said:

"It necessarily follows that the contestant may set up in his notice any *facts* showing that he is legally entitled to the office * * *." (Emphasis supplied.)

Further in support of the view that the use of the word "grounds" in Sec. 56-604 does not dispense with allegations of specific facts upon which the grounds are based, see Sec. 56-606 of 1941 Comp., which provides:

"* * * any material fact alleged in the notice of contest not specifically denied by the answer within the time aforesaid shall be taken and considered as true."

We think an election contest, although one in which the public should be deeply concerned, is actually and usually a battle

between adversary candidates and opponents. A contestant seeks to overthrow the actions and certifications of the election officials charged with the duty of holding and canvassing elections.

There is an important decision by the Supreme Court of our neighboring state of Oklahoma rendered in 1942, in a situation very similar to that in the case at bar. The case is reported in Otjen v. Kerr, 191 Okl. 628, 136 P.2d 411, 413, and abounds in learned discussion, most of which we approve. In that state, the notice of contest must set forth:

"A state of facts, which, if true, would change the result or a state of facts showing fraud which would bring about the same result."

The sole question for decision by the Supreme Court was whether or not the petition contained a sufficient statement of facts upon which to base an election contest. The report shows the petition alleged the returns of each precinct involved were inaccurate and erroneous; that many votes in each precinct were counted for Mr. Kerr though cast for other candidates; that mistakes, errors or omissions in each precinct resulted in erroneous counting in favor of Mr. Kerr; that in the returns, erroneous credit for votes was given Mr. Kerr in each precinct; that by errors, less than the correct credit was given the contestant in each precinct on the returns; that in each

precinct, many persons, not qualified electors, were permitted to vote; that in each precinct many illegal ballots were counted; and so on, including erroneous tally sheets, returns and certifications, concluding with the allegation that the contestant received the majority of votes and was elected.

The court observed that it was the public policy as declared by their several election laws (as in New Mexico) to diligently safeguard the sanctity of the secret ballot, which is a treasured heritage of America. The court called attention to the fact that there (as here) the dominant political parties have representation on the election boards of the several counties and each of the precinct boards which have active charge of all elections. These election officials must subscribe to a constitutional oath of office. Careful and detailed provision is made for casting and preservation of the ballots and for counting, checking the voted ballots, and making public the results thereof; provision is made for representation of the dominant political parties among the counties; each political party may appoint a watcher with authority to observe each count in detail; penalties are provided for misconduct. The court then says:

"With the election so carefully attended by the law, the result as tabulated and published by those officials is deemed worthy of verity. Election results so officially declared and established are final except

where it is made to appear by verified statement, setting forth a state of facts, which, if true, would change the result or a state of facts showing fraud which would bring about the same result. * * * The dignity and finality of the election returns is founded upon the prerogative and will of the people speaking by secret ballot in the exact manner which they have prescribed through the Legislature. These returns cannot lightly be set aside or overthrown. That can be done only as the legislation on the subject has provided."

It would unduly lengthen this opinion to copy here the reasoning and quotations of judicial expression and from text books upon which the court reached the conclusion that the notice of contest did not contain any allegations of fact to be tried at a hearing. The court summed up as follows:

"From the decisions and texts cited certain rules are apparent. The contestant must have some knowledge or means of information as to facts that would.change the election result or as to facts that show fraud; and he must allege or state such facts with sufficient certainty to show what facts he will seek to prove at the hearing, thus warning his opponent as to what alleged facts he should there prepare to meet by counter proof. General statements and all embracing statements which demonstrate lack of factual foundation and in themselves exclude probability of information or knowledge thereof in entirety may fall far short of the simple requirements, no matter in how forceful or extravagant language the statement is written."

We think that the foregoing summary is applicable to our election contest statute.

The counsel for contestant-appellant has cited decisions of courts announcing a contrary view. These we have considered but find not persuasive.

What we have said makes it unnecessary to consider other assignments of error presented by contestant-appellant.

From all of the foregoing, it appears that the judgment must be affirmed, and

It is so ordered.

SADLER, C. J., and BRICE, LUJAN, and HUDSPETH, JJ., concur.