197 P.2d 421

## TRUJILLO v. TRUJILLO.

### No. 5089.

Supreme Court of New Mexico.

Sept. 7, 1948.

Frank Andrews and Samuel Z. Montoya, both of Santa Fe, for appellant.

Bigbee & Kool, of Santa Fe, for appellee.

SADLER, Justice.

The appellant, who was contestee below, and the appellee, the contestant, were rival candidates for the office of County Clerk of Rio Arriba County at the general election held on November 5, 1946. They will be here referred to as contestant and contestee, respectively. The contestee, as the candidate on the democratic ticket for County Clerk was certified to have received a majority of sixteen votes and received the certificate of election at the hands of the County Canvassing Board. In due season he was contested for the office by Mrs. Cruz Trujillo, candidate for the same office on the republican ticket. Judgment went for the contestant below and this appeal followed. Since the case was decided on the pleadings, no evidence having been taken, the form of the notice of contest filed and of the answer in certain particulars becomes important. The notice of contest reads:

"Comes Now the Contestant, Mrs. Cruz Trujillo, and for her grounds of contest states:

"I That she was the Republican candidate for County Clerk of Rio Arriba County; and the Contestee, Edward Trujillo, was the Democratic candidate for County Clerk of Rio Arriba County.

"II That On November 27, 1946, following a recount requested by Edward Trujillo, the Contestee herein, the County Commissioners of Rio Arriba County met as the County Canvassing Board and issued a Certificate of Election to Edward Trujillo, based on the canvass and recount of the returns of Rio Arriba County, which purported to show on their face that Edward Trujillo received a majority of sixteen (16) votes.

"III That according to the County Canvass of Rio Arriba County, Edward Trujillo received one hundred seventy-four (174) votes, and the Contestant herein received one hundred forty-three votes in Precinct 1-A. In Precinct 2, Edward Trujillo received one hundred seventy-two votes, and the Contestant herein is shown to have received one hundred sixty-seven (167) votes. In Precinct 8, the County Canvass shows that Edward Trujillo received one hundred twelve (112) votes, and the Contestant herein, eighty-three (83)

votes. In Precinct 14, the returns show that Edward Trujillo received ninety-eight (98) votes, and that the Contestant herein received seventy-four (74) votes. In Precinct 15, the returns show that Edward Trujillo received thirty-eight (38) votes, and the Contestant herein thirteen (13) votes. In Precinct 17-B, the returns show that Edward Trujillo received one hundred one (101) votes, and the Contestant herein, eleven (11) votes. In Precinct 18, the returns show that Edward Trujillo received one hundred seventy-eight (178) votes, and the Contestant herein, eighty-seven (87) votes. In Precinct 19, the returns show that Edward Trujillo received one hundred-fifty (150) votes, and the Contestant herein one hundred thirty-seven (137) votes. In Precinct 20, the returns show that Edward Trujillo received ninety-seven (97) votes, and the Contestant herein ninety-one (91) votes. In Precinct 21, the returns show that Edward Trujillo received eighty-seven (87) votes, and the Contestant herein sixty-seven (67) votes. In Precinct 25, the returns show that Edward Trujillo received one hundred eighty-four (184) votes, and the Contestant herein, one hundred fifty-seven (157) votes. In Precinct 28, the returns show that Edward Trujillo received two hundred sixty-seven (267) votes, and the Contestant herein two hundred thirty-five (235) votes. In Precinct 29, the returns show that Edward Trujillo received twelve (12) votes, and the Contestant herein received six (6) votes. In Precinct 44, the returns show that Edward Trujillo received one hundred thirty-one (131) votes, and the Contestant herein, eighty (80) votes; and in Precinct 46, the returns show that Edward Trujillo received twenty (20) votes, and the Contestant herein received five (5) votes.

"IV That the returns, as indicated in Paragraph Number III of this Notice of Suit, as certified to by the County Commissioners Rio Arriba County, sitting as a County Canvassing Board of Rio Arriba County, show that in the group of Precincts listed in Paragraph Number III of this Notice of Contest, that Edward Trujillo carried such Precincts by a majority of four hundred sixty-six (466) votes.

"V That in all of the Precincts listed in Paragraph Number III of this Notice of Contest, the election officials failed to substantially comply with the provisions of the election code of the State of New Mexico, designed to protect the secrecy and sanctity of the ballot and the correct recording of the names and ballot numbers in the poll books and the entering of the ballot number on the book of bound original Affidavits of Registration, as provided by the laws of the State of New Mexico; and the Contestant herein alleges on information and belief that the election officials failed in the following particulars to com-

ply with the provisions of the election code of the State of New Mexico in all of the Precincts listed in Paragraph III of this Notice of Contest, as follows, to-wit:

"(A.) In that they failed to include the ballot number for each voter, as required by the Statutes of the State of New Mexico, in both the poll books and the book of bound original Affidavits of Registration.

"(B.) In that they failed to ascertain whether each person who presented himself at the polls to vote was properly registered, and failed to insert the ballot numbers of the registered voters on the bound original Affidavits of Registration.

"(C.) In that the poll clerks and election officials failed to enter the name of each voter as it appears on the registration book in the poll book with the street address of the voter where possible, and failed to list the correct number of the voter and the correct number of the ballot voted by such voter on the poll books and on the original Affidavits of Registration, as required by the Statutes of the State of New Mexico.

"(D.) In that they failed to list the names of married women whose names appear in the Registration Book by their given names instead of under the name of their husbands, and failed to enter such name upon each poll book as the married name, as required by the Statutes of the State of New Mexico.

"(E) In that the election officials failed to require, or in any way comply with the provisions of the election code of the State of New Mexico that require the making of Affidavits for Assistance before any voter is given assistance at the polls, and that the election officials in all of the Precincts listed in Paragraph III of this Notice of Contest allowed numerous voters to receive assistance in violation of the laws of the State of New Mexico, without having the voters sign Affidavits for Assistant, or without complying with any of the mandatory statutes of the State of New Mexico pertaining to assistance of voters.

"(F) In that the election officials failed to prohibit electioneering within fifty (50) feet of the polling places in each of the Precincts listed in Paragraph III hereof, and violated said section by permitting and allowing electioneering within fifty (50) feet of the polling places in such a manner that the secrecy of the ballot was not protected, as required by the laws of the State of New Mexico, and in such a manner that voters were intimidated and were not in many cases able to exercise their free choice of candidates.

"(G) In that the election officials of all of the Precincts listed in Paragraph III of this Notice of Contest failed and refused to comply with the Statutes of the State of New Mexico pertaining to the manner

of counting and tallying the ballots and pertaining to the signing of certificates, as required by the Statutes of the State of New Mexico.

"(H) In that the election officials of all of the Precincts listed in Paragraph III of this Notice of Contest failed and refused to certify the name of the last person who voted and the last ballot cast at the election prior to the termination of the voting at the time provided by law.

"(I) In that the election officials of all of the Precincts listed in Paragraph III of this Notice of Contest failed and refused, at the close of the polls at six o'clock in the evening on November 5, 1946, the day of election, to immediately place all unused ballots bearing the names of candidates in the ballot boxes, wrapped in packages separate from those in which the ballots cast by voters are wrapped.

"(J) In that the election officials allowed persons in the places where voting was taking place in addition to the judges and clerks of election, one accredited challenger appointed in writing by the County Chairman or Precinct Chairman from each political party represented on the ballot, State Police and other peace officers performing official duty, and electors engaged in voting and also counting judges and clerks in cases where appointed, and that the additional persons were allowed in the voting places of all of the Precincts listed

in Paragraph III hereof in addition to those enumerated in this paragraph.

"(K) In that the election officials had in their possession intoxicating liquor while performing official acts under the provisions of the election code of the State of New Mexico, on November 5, 1946, and in addition, allowed other persons to have liquor within their possession within two hundred (200) feet of the polling places of each of the above-listed Precincts.

"VI That, as a result of the failure of the election officials to place the names of all voters on the poll books in the manner in which they appear on the Affidavits of Registration, it is impossible to ascertain with certainty whether many of the persons whose names appear on the poll books are in fact registered or unregistered; and therefore Contestant alleges on information and belief that the election officials of all the Precincts listed in Paragraph III hereof fraudulently allowed unregistered voters to vote in the election held on November 5, 1946, and counted, tallied, and certified the votes of each of such unregistered persons for the office of County Clerk of Rio Arriba County.

"VII. That as a result of the failure of the election officials in all of the Precincts listed in Paragraph III above to properly insert the ballot number of each voter on the registration affidavits, as required by the Statutes of the State of New

Mexico, and in addition the failure of the election officials to properly place the names of the voters in the poll books as they are listed in the Registration Affidavits, it is impossible to ascertain whether or not large numbers of unregistered voters voted; and this Contestant alleges on information and belief that unregistered voters voted in large numbers in each of the Precincts listed in Paragraph III, and that the election officials fraudulently allowed such illegal voting in order to record and elect all candidates on the Democratic ticket, including the Contestee herein.

"VIII   That the Democratic candidates, including the Contestee herein, had majority representation upon the Board of Election Officials for each Precinct or election division listed in Paragraph III herein, and that the majority of all the election officials of the Precincts listed in Paragraph III herein were Democrats.

"IX   Contestant alleges on information and belief that the election officials of each of the Precincts or election divisions listed in Paragraph III hereof were guilty of allowing fraud, intimidation, coercion and undue influence; and all of said election officials asserted fraud, intimidation, coercion and undue influence in that the secrecy and the purity of the ballot was not safeguarded and that the failure and neglect to comply with substantial requirements of the election law, as more specifically alleged elsewhere in this Notice of Contest was intentional on the part of the election officials.

"X   That in Precinct 17-C, two persons voted marking their ballot with an "X" for the straight Republican ticket and then placed an "X" in the square immediately below the name of Edward Trujillo, the Democratic candidate, and that the election officials of such Precinct erroneously counted and tallied such two votes for Edward Trujillo, when in fact they were cast for no one.

"XI   That in Precinct 37, two persons voted marking their ballot with an "X" for the straight Republican ticket and then placed an "X" in the square immediately below the name of Edward Trujillo, the Democratic candidate, and that the election officials of such Precinct erroneously counted and tallied such two votes for Edward Trujillo, when in fact they were cast for no one.

"XII   The election officials were unable to ascertain when voters had voted more than once by their failure to comply with the provisions of the election code, as set forth above; and, as a result, fraudulently allowed the same person to vote more than once in many instances in all of the Precincts and election divisions set forth in Paragraph III above.

"XIII That the election officials in Precinct 17-B, La Puente, all left the place where the election was being held during or around the noonhour to go to lunch and left the polling place without any election official, except a polling clerk, present. This polling clerk was Fermin Manzanares, a Democrat, and he was the only person present during this entire period of time.

"XIV That the election officials of Precinct 14 did not comply with the requirements of the Statute for delivering the ballot box, together with all election equipment, to the County Clerk's office, but permitted and allowed Albert Amador, the Democratic candidate for County School Superintendent, to take the ballot box, together with both keys to the ballot box, to the County Clerk's office in Tierra Amarilla.

"Wherefore, Contestant respectfully prays that all of the votes of the entire election divisions and Precincts set forth and enumerated in Paragraph III of this Notice of Contest be refused and that the Contestant is entitled to have the returns from Rio Arriba County recomputed correctly showing her majority of over four hundred fifty (450) votes.

"It Is Further Prayed that two (2) votes be stricken from the total of those received by Edward Trujillo in Precinct 17-C, and that two (2) votes be stricken from the votes shown to have been received by Edward Trujillo in Precinct 37.

"Contestant further prays that judgment be entered adjudging Contestant to be entitled to the office of County Clerk of Rio Arriba County with all the privileges, powers and emoluments attending thereto and for her costs herein, and

"Further that the Contestant have judgment placing her in possession of said office of County Clerk of Rio Arriba County and for the emoluments therein from the beginning of the term for which she was elected with all her costs."

The answer filed in response to the foregoing notice of contest need not be set out in extenso. Suffice it to say that it consists of three parts denominated as "first", "second" and "third" defenses. The "First Defense" was in the nature of a demurrer, consisting of legal objections to the notice of contest as a whole and to the several paragraphs thereof. The "Second Defense" consists of admissions of the allegations of certain paragraphs of the notice of contest, or parts thereof, and denials of the allegations of certain others, or certain parts thereof. The "Third Defense" puts forward affirmative matter pleaded by way of defense.

It will be noted from a reading of paragraph V of the notice of contest that the primary grounds of contest are set forth therein. The basic objection to the state-

ment of grounds raised by contestee in his answer is the generality and lack of particularity employed. Illustrative of the character of contestee's challenge, paragraphs (a), (b) and (c) of section III of the answer, aimed at section V of the notice of contest and repeated in substance as to each and every succeeding paragraph V thereof, are set out herein as follows:

"Without waiving any other defense herein set forth, contestee states that the Notice of Contest fails to state facts sufficient to constitute grounds of contest or upon which relief may be granted to the contestant for the following reasons:

"(a). That paragraph V, thereof, fails to set forth any, facts showing a violation of any part of the election code, designed to protect the secrecy or sanctity of the ballot, or that the secrecy or sanctity of the ballot was violated; that said paragraph fails to set forth facts showing that the said election officials failed to substantially comply with the statutory provisions of the election code; that the allegations of paragraph V are merely general allegations of error without pointing out any specific mistake or fraud or facts showing that the results of the election were, in any way, affected thereby, or the substance of the facts upon which contestant's belief is founded, and that such general allegations of error, believed to exist, are not suffi-

cient grounds upon which to base a contest proceeding, and further, that said allegations are redundant and immaterial and should be, by this Court, stricken or dismissed.

"(b). That the allegations contained in paragraph V (A) fail to state facts constituting a cause of action in ordinary and concise language in that said allegations fail to allege in what specific particulars, in each contested Precinct, the election officials failed in their duty and, therefore, do not give to the contestee sufficient notice to enable him to prepare a defense; that said paragraph is merely a general and uncertain allegation of error which does not set forth facts showing a failure on the part of the election officials to substantially comply with the provisions of the election code and fails to specifically set forth the names of the voters whose ballot numbers were not placed in the poll books and in the book of bound, original Affidavits of Registration and, by reason of the above, said allegations are redundant and immaterial and should be, by this Court, stricken or dismissed.

"(c) That the first part of paragraph V (B), thereof, alleges that the election officials failed to ascertain whether each person, who presented himself at the polls to vote, was properly registered; that said allegation is merely a general allegation of error without pointing out any specific

mistake or fraud or the facts upon which contestant's belief is founded and that the names of the voter, allegedly not ascertained to be registered, were not set forth as required by statute and that such a general allegation of error, believed to exist, is not sufficient ground upon which to base a contest proceeding; that the objections, hereinbefore, made in paragraph (b), are hereby adopted as though set forth in full herein as to the remaining allegations of paragraph V (B)."

In a reply filed to contestee's answer, the contestant after entering a general denial to all allegations in paragraphs I, II and III of contestee's First Defense, then moved that the court accept as true all facts alleged in her notice of contest for failure on defendant's part specifically to deny them. She prayed the court to render judgment placing her in possession of the office in question and all emoluments thereof from the beginning of the term for which she was elected. A like reply and prayer were interposed to the contestee's Second Defense and after interposing a general denial to paragraphs I and II of contestee's Third Defense, certain specific admissions and denials were made as to the remainder thereof.

The contest having thus been put at issue, the matter came on for hearing on the various motions contained in contestee's answer and contestant's reply. As a result the court struck from the notice of contest paragraphs VI, VII, X, XI and XII and ordered all other allegations of the notice of contest to be considered admitted because not specifically denied, the language of the order reading as follows:

"Wherefore, It Is Ordered, that paragraphs VI, VII, X, XI and XII of the Notice of Contest be and the same are hereby ordered stricken.

"It Is Further Ordered that any and all other issues raised by contestee in his first defense to the Notice of Contest be and the same hereby are overruled.

"It Is Further Ordered that the second defense of Contestee's answer is hereby ordered stricken and the allegations of the Notice of Contest are declared to be true for the reason that they are not specifically denied and are therefore admitted.

"And, It Is Further Ordered And Found, that the issues raised in the third defense of contestee's answer are moot under this ruling.

"And, It Is Further Ordered, that the respective parties submit their requested Findings of Fact and Conclusions of Law, and that Judgment be entered in this cause for the contestant as prayed in the Notice of Contest."

The contestee's principal claim of error is that the court erred in overruling his motion to dismiss the notice of contest as

a whole for failure to state grounds of contest upon which relief could be granted; or, in the alternative and for consideration only in the event the motion to dismiss the entire notice of contest should be overruled, that it was error to deny the motion to strike specified and separate paragraphs thereof. After careful consideration, we have come to the conclusion that the trial court properly denied the motion in so far as it asked dismissal of the notice of contest outright but that it erred in declining to strike all of paragraph V of the notice of contest and each and every sub-paragraph thereof. We sustain the claim of contestee, so persuasively argued by his counsel, that each and every ground of contest set up in this paragraph of the notice of contest is so vague, general and lacking in particularity as to amount to nothing more than generalities, constituting mere conclusions of the pleader and imposing upon the contestee no duty to make answer thereto.

Counsel for the contestant have sought, in paragraph V of their notice of contest, to take advantage of 1941 Comp. § 56-347, which, so far as material, reads:

"In any election contest a prima facie showing that the election officials of any election division have failed to substantially comply with the provisions of the Election Code, designed for protecting the secrecy and sanctity of the ballot and the correct recording of the names and ballot numbers in the poll books, and the entering of the ballot numbers in the book of bound original affidavits of registration as herein provided, shall cast upon the candidates of the political party which had majority representation upon the board of election officials for such election division the burden of proving that no fraud, intimidation, coercion or undue influence was exerted by said election officials, and that the secrecy and purity of the ballot were safeguarded and no intentional evasion of the substantial requirements of the law was made. Upon failure to make a showing upon which the trial court shall so find, the votes of such entire election division shall be rejected. Provided that no such rejection shall be so made where it appears to the trial court that the election officials ignored the statutory requirements with the probable intent of procuring the rejection of the vote of such election division."

It is to be observed that this language of the Election Code, added as an amendment thereto by L. 1935, c. 147, § 42, transposes the conventional position of the parties as to the duty of going forward with the evidence by creating a prima facie case in favor of a contestant running on the ticket of the minority political party upon a prima facie showing that the election officials of an election division have failed to comply substantially with the provisions of the Election Code in specified particu-

lars, among such provisions being those "designed for protecting the secrecy and sanctity of the ballot." When this prima facie showing is made, under the condition named, it then becomes the duty of the contestee as a candidate of the dominant political party having majority representation upon the board of election officials, to prove "that no fraud, intimidation, coercion or undue influence was exerted by said election officials, and that the secrecy and purity of the ballot were safeguarded and no intentional evasion of the substantial requirements of the law was made."

■■ It should be obvious to all, however, that before this favored position is to be achieved by a contestant, he must make the prima facie showing prerequisite to its enjoyment, first, by alleging the specific facts which alone entitle him to it and, then, furnishing proof thereof where such facts are properly denied. Certainly, the first condition is not to be fulfilled by opening the Election Code on the portion thereof entitled "Instructions to Election Officers" (1941 Comp. § 56-319) and copying, slavishly, almost paragraph by paragraph in the form of allegations, the language of the statute, without alleging a single specific fact constituting the noncompliance charged against the election officials in the form of conclusions of the pleader.

The Election Code provides for a notice of contest specifying the "grounds" upon which the claim of the contestant is based, and in the event it is charged that illegal votes have been cast or counted for the contestee, the name of each person whose vote is said to have been illegally cast or counted, the precinct or election district involved, and the facts showing such illegality, all must be specified with particularity. 1941 Comp. § 56-604. Although the foregoing statute relates to contest of *elections,* District Court Rule No. 87, promulgated by the Supreme Court, effective June 1, 1946, makes the same applicable to the contest of a *nomination* in primary elections.

We construed the foregoing statute in Ferran v. Trujillo, 50 N.M. 266, 175 P.2d 998, where the grounds of contest were alleged with no greater particularity than in paragraph V of the notice of contest in the case at bar and held them insufficient to call upon contestee to answer. See, also, the earlier cases of Wood v. Beals, 29 N.M. 88, 218 P. 354, and Bryan v. Barnett, 35 N.M. 207, 292 P. 611.

In Ferran v. Trujillo, supra [50 N.M. 266, 175 P.2d 1000], we said:

"For an instance of the words 'grounds' and 'facts' having been used interchangeably in our decisions, relating to this statute, see Rogers v. Scott, 35 N.M. 446, 300 P. 441, 442, where the court said:

" 'It necessarily follows that the contestant may set up in his notice any *facts*

showing that he is legally entitled to the office * * *.' (Emphasis supplied.)

"Further in support of the view that the use of the word 'grounds' in Sec. 56-604 does not dispense with allegations of specific facts upon which the grounds are based, see Sec. 56-606 of 1941 Comp., which provides:

" ' * * * any material fact alleged in the notice of contest not specifically denied by the answer within the time aforesaid shall be taken and considered as true.' "

Following the foregoing statement we reviewed and quoted at length from the opinion in the important case of Otjen v. Kerr, 191 Okl. 628, 136 P.2d 411, winding up our consideration of same with a further quotation therefrom and our comment, as follows:

"It would unduly lengthen this opinion to copy here the reasoning and quotations of judicial expression and from text books upon which the court reached the conclusion that the notice of contest did not contain any allegations of fact to be tried at a hearing. The court summed up as follows:

" 'From the decisions and texts cited certain rules are apparent. The contestant must have some knowledge or means of information as to facts that would change the election result or as to facts that show fraud; and he must allege or state such facts with sufficient certainty to show what facts he will seek to prove at the hearing, thus warning his opponent as to what alleged facts he should there prepare to meet by counter proof. General statements and all embracing statements which demonstrate lack of factual foundation and in themselves exclude probability of information or knowledge thereof in entirety may fall far short of the simple requirements, no matter in how forceful or extravagant language the statement is written.'

"We think that the foregoing summary is applicable to our election contest statute.

"The counsel for contestant-appellant has cited decisions of courts announcing a contrary view. These we have considered but find not persuasive."

The conclusion reached as to the claimed grounds of contest set up in paragraph V of the notice of contest would prove decisive of the case but for the fact that in paragraphs XIII and XIV of the notice of contest specific facts are alleged showing failure to comply substantially with the provisions of the Election Code, designed to protect the secrecy and sanctity of the ballot, in that, to-wit, (1) as alleged in paragraph XIII, the election officials in Precinct 17-B (La Puente) left the polls unattended during the noon hour to go to lunch, save for the presence of a

democratic polling clerk, one Fermin Manzanares, and (2) as alleged in paragraph XIV, the election officials in Precinct 14, in disregard of the statutory requirements in such behalf, permitted one Albert Amador, the democratic candidate for county school superintendent, to deliver the ballot boxes and both keys thereto, along with all election equipment, to the office of the county clerk in Tierra Amarilla, following the official count and recording of the vote in said precinct. The democratic party had majority representation on these two election boards.

The foregoing grounds of contest are met in contestant's answer, in each instance, with a general denial only. Consequently, under the express language of 1941 Comp. § 56-606, these grounds of contest are to "be taken and considered as true." They were so treated by the trial court in a formal order entered in the cause the pertinent language of which has been set out hereinabove. The vote in either of these precincts, independently of that in the other, when disregarded, gives the contestant a majority sufficient within itself to overcome the contestee's majority of sixteen (16) as shown by the official canvass for the county as a whole. Considered together and deducted, they overcome contestee's majority in the county and leave the contestant a majority of one hundred fourteen (114) in the race for the office of county clerk.

But it is argued by counsel for the contestee (appellant) that the adoption by this court of the Rules of Civil Procedure for the District Courts of the state has wrought a change in the statutes treated as rules of pleading theretofore applicable to election contests. They call attention to 1941 Comp. § 56-722, which so far as material reads:

"Every petition, case, cause, action or proceeding, whether civil or criminal, which may be brought or filed in any district court under any provision of the Election Code shall be deemed a proceeding within the provisions of chapter 84, Session Laws of 1933 (§§ 19-301, 19-302), and the provisions of said act shall be applicable thereto."

and argue therefrom that the strictness of the statutes governing election contests has been lifted, especially in relation to what constitutes a specific denial. They refer to 1941 Comp. § 19-101, rule 8(b), reading: "* * * Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, *he may make his denials as specific denials of designated averments or paragraphs* * * *." (Emphasis supplied by contestee's [appellant's] counsel.)

With this predicate, contestee's counsel conclude:

"Thus we believe it is obvious that the old common law definition of a specific de-

nial has been changed by our new rules, and the denial set forth in paragraph III of the Second Defense is exactly as required under 19-101, 8(b), i. e. a specific denial *of designated* paragraphs. (Emphasis by contestee's counsel.)

The argument advanced is ingeneous but we are not prepared to accept it. 1941 Comp., § 19-101, Rule 1, provides:

"These rules govern the procedure in the district courts of New Mexico in all suits of a civil nature whether cognizable as cases at law or in equity, *except in special statutory * * * proceedings* where existing rules are inconsistent herewith." (Emphasis ours.)

█ It is thus seen that under express language of the foregoing Rule 1, 1941 Comp. § 19-101, declaring the scope of Rules of Civil Procedure for District Courts, that special statutory proceedings, where inconsistent, are not governed thereby. This has been the uniform holding of the Supreme Court from the beginning to date. Bull v. Southwick, 2 N.M. 321; Bryan v. Barnett, 35 N.M. 207, 292 P. 611; Ferran v. Trujillo, '50 N.M. 266, 175 P.2d 998. The trial court did not err in treating as admitted, because not specifically denied, the allegations of paragraphs XIII and XIV of the notice of contest.

It is argued with much earnestness by contestee's counsel that the defaults charged are mere irregularities which, absent a showing of fraud, should not be held decisive. Cases such as Carabajal v. Lucero, 22 N.M. 30, 158 P. 1088; Montoya v. Ortiz, 24 N.M. 616, 617, 175 P. 335; Gallegos v. Miera, 28 N.M. 565, 215 P. 968, and Wright v. Closson, 29 N.M. 546, 224 P. 483, are cited in support of this contention. But in some of these very cases as, for instance, Gallegos v. Miera; Montoya v. Ortiz and Wright v. Closson, the court qualifies the holding by stating that in the absence of a statute *so providing,* mere irregularities will not warrant disregarding the vote of an entire precinct or voting district where there is no fraud.

█ The fault in this argument lies in the fact that here we have exactly such a statute, 1941 Comp. § 56-347. It casts the burden on the candidate of the dominant political party to show there was no fraud, if a prima facie showing be made that the provisions of the Election Code designed to protect the secrecy and sanctity of the ballot have not been substantially complied with. The penalty for failure is rejection of the entire vote of the election district involved. The power of the legislature so to provide cannot be questioned. Orchard v. Board of County Commissioners, 42 N.M. 172, 76 P.2d 41.

The conclusions reached render unnecessary the consideration and decision of other questions raised and argued by counsel for contestee (appellant). It is

perhaps worth mentioning that the allegations of the Third Defense in contestee's answer are subject to the same objections and criticism for vagueness and generality as are the allegations of paragraph V in contestant's notice of contest. Indeed, this section of contestee's answer seems little more than a rescript of certain sub-sections of paragraph V of the notice of contest, but related only to the precincts or voting districts carried by contestant, as her allegations are related only to precincts carried by the contestee.

It follows from what has been said that the judgment of the trial court is correct and should be affirmed.

It is so ordered.

LUJAN, McGHEE, and COMPTON, JJ., concur.

BRICE, Chief Justice (specially concurring).

I concur in the opinion of Mr. Justice Sadler; but I have long been impressed by the fact that the contest procedure should be amended. The provision for specific denials of facts charged by a contestant has caused much injustice and the loss of offices by citizens who have been elected thereto. It should be amended so that the pleadings in ordinary suits would apply. This would not cause any more delay than the contest statutes and would be in accord with justice. Without reference to this case, it is too easy to secure an unjust advantage of the unwary, by charges of alleged facts which, to say the least, are not known to be true.